May it please the Court, my name is Charles Ivey. I am the attorney for the appellant in this matter. This matter comes before the Court for the purposes of statutory interpretation of the actual fraud section of the United States Bankruptcy Code, Section 548A1A. There second issue deals with the issue of transfer. This arises as a result of a Ponzi scheme of which the trustee has alleged that the deposits into the bank were done with the intent to hinder delay into fraud and therefore fraudulent conveyances. Since to a certain extent the transfer is a condition preceded to getting into the issue of diminution of the transfer. The appellant's claim is that the transfer was done with the intent to hinder delay into fraud and therefore fraudulent conveyances. The appellant's claim is that the transfer was done with the intent to hinder delay into fraud and therefore fraudulent to be appealed and that we had, I think, satisfied the Court with that on the 12B6 and Judge Osteen didn't go into that. But I am prepared to address that, Your Honor, and would ask the Court to simply look initially at the statute itself because I think when you compared the current statute and then you compare it to the Act, then I can address what I have to address which is the Massey decision which I don't think needs to be followed as well as the Barnhill decision. The new statute, i.e. the Code, which was amended in 205, has exceedingly and broadly defined the term transfer. It has cleared up issues. It is now something which is not just any mode, it is direct, indirect, absolute, it is conditional, it is voluntary, it is involuntary, and it is not just a property of it, it is an interest in property and it is not just the transfer, it is a parting with. When you look at that clearly, deposits into a bank account would be a transfer. Of course, we have to deal with... It seems to me that the law is all over the place on that whole issue there, as well as into this type of account. I mean, the circuit, I don't think there is an agreement on it. And we have got law all over the place. You look at the statute, there is what looks like an internal inconsistency there. But it is an important issue. It is an important issue and I don't disagree with the Court. I think there have been, there are conflicting and you just simply can't reconcile some of the decisions. And I think part of it goes back to the fact that courts have followed Massey without getting behind Massey, without looking at what Massey really did. And Massey defined 1-25 of the Act, which was the transfer definition at that time. And it also dealt with transfers of any mode, but it had a condition at the end of it that that transfer had to be as a payment, pledge, mortgage, gift or security. And that is why Massey found that a deposit was not a transfer because it was not in the terms of a pledge or a payment. That entire paragraph is gone. So the Massey definition, the Supreme Court dealt with, no longer exists, Your Honor. Considerably broadened, isn't it? It has been exceedingly broadened and I could at least argue with the 0-5 amendments, it has even been broadened further. Then we run into the Barnhill decision. The Barnhill decision, again, is a decision that is pointed to that attempts to restrict transfer, but Barnhill has to be looked at solely on its facts. That was in the context of a preference and a determination of when the payment by check became the payment of that antecedent debt. That's why the court in its ruling, caveated its ruling and specifically said that for the purpose of payment by ordinary check, therefore a transfer is defined and went on to find that at the point of honor. We have to remember we're dealing in a preference statute with payment of a debt, so it cannot be conditional. That's why the court also talked about there couldn't be an assertion that that transfer was unconditional until the date of honor. We're dealing with restricting transfer within the context of that statute. The Tenth Circuit indicated earlier on that restriction even didn't apply within the definition of preference under the 547C, the new value. You could have had, if they had said a check being deposited is the point of transfer for preference, you'd have the anomaly of somebody giving a check. Bankruptcy intervening, check doesn't get cleared, but you've got technically a preference, even though the payment was not there. Clearly, the Barnhill decision, as many courts have indicated, needs to be based on these facts, and as I've indicated in the brief, I think that, for example, the Fourth Circuit decision that affirmed Judge Bullock and Quinn is controlling law as well. So I think that clearly we have a transfer here of the four different types of transfers that took place. You have the check. When Mr. Whitley, the defrauding party, got hold of the check, he had property. He then took that property and deposited it into the bank, and that's the transfer. I think your heavier lift, frankly, is diminishment. Well, I would go to the diminishment and point out, Your Honor, in terms of diminishment, I'd like to first deal with that by looking at how can you apply that element and then reconcile it with existing parts of the bankruptcy code. We have actual fraud and we have the constructive fraud. Now, if I have to prove an actual fraud, diminution of value to the bank, and I do that, I'm going to prove, one, debtors insolvent, two, that there was less than fair equivalent value. What have I just done? I've just proved constructive fraud. So why would I ever bring an actual fraud if I have to prove constructive fraud to begin with? Now, what would the bank defend on that? Most banks are going to come back and say, Well, we acted in good faith. We were fine. We gave value. You got a credit. Well, if they then prove the value of the affirmative defense, which is value in good faith, they've just disproven the implied element. So we've got dangling out there good faith that now doesn't even apply. So you basically got an affirmative defense that makes no sense because I have to first prove that there was no diminution of value, which then makes that defense one that would never be raised. If they can prove the first element, they've just erased my element. I'd also point out... Well, you don't get to an affirmative defense until the claimant establishes the elements of the claim. But one of the elements of the claim is one of the two elements of the affirmative defense. So by definition... That's not unknown to the law. You would never get to the issue of good faith. No. Raise judicata. But why would the... There are lots of instances where there's an affirmative defense that is infused with an element of the claim. This isn't infused. It basically is saying that the entire affirmative defense is useless because of the fact that one of those issues takes over the other. An affirmative defense that's not needed can hardly be called useless. If you don't need it, how can it be useless? Because Congress puts it in there, I think it was with the intent that it basically... And this is throughout the code. They took the concept of diminution of value and they reinserted it in several places, one of which was you have to show value and you have to show good faith. And the reason they have good faith in there is because it goes all the way back to the Statute of Elizabeth. It goes back to the idea of clean hands, is that you should not be allowed to come into a court of equity and ask for equity unless you have any yourself active for equity. So it is encompassed in that part of the statute. It is also encompassed in the preference statute in two places. One is specifically the new value. It gets into it there. It also gets into it the element now of being able to show that there was more, they got more than they would have in a Chapter 7 case. So you've got a situation that this factual case is exactly why we have a fraudulent conveyance. You have a bank that the facts show ran Mr. Whitley off because he was doing a Ponzi scheme, allowed him back in, allowed him back in with some edging from the chairman. Then, as my expert opinion shows in this case, they violated their own previous practice. They violated their manuals. They violated federal regulation and they violated bank secrecy law, resulting in, if after the fact that these fraudulent conveyances were allowed in, new debt either in terms of new victims or additional victims of $1.7 million. So there's real harm here and that is what this code was intended to address. Going back to Massey, which has argued that this shouldn't be allowed. Have you abandoned your conspiracy claim altogether by not appealing it? I think the answer is pretty obvious, isn't it? I haven't had a chance to try that yet and I could argue... Oh, is it still pending? I mean, it was denied, but it was not one that I can immediately appeal. So if this case gets remanded back to where I can try it, I think then, because this was a motion for some judges... I thought it was dismissed. It was dismissed. With prejudice. It was dismissed on 12B6. So I think if it's tried, I still think I would have a right. You didn't appeal it. I did not appeal that at that time, no, sir. Why do you think it's still pending? Well, I felt at the time that we made our decision, besides the finances of a bankruptcy case, that the case of the fraudulent conveyance was a very strong case. Okay, but I'm a little confused. So you think you still have a conspiracy claim hanging out there against the bank? I don't think it's been dismissed, whether I may or may not have an appeal to that. If, in fact, if this case never goes back to trial, I do not have an appeal. If it's tried, I may very well have an appeal on that. Okay. I'll accept that. I don't understand it, but I'll accept it. But the reason we did not pursue it on other reasons is because of the strength we felt of this case. One of the arguments is that the Supreme Court and the Massey decision also, that ruling should apply to the fact that diminution of value. Massey just simply shouldn't apply. It's a case that interprets a definition of transfer, which no longer exists, in the context of a claim objection process that no longer exists, comparing a preference statute that's been changed and a statute for a set-off that's been changed. So Massey simply doesn't apply. Then you get to the Derivium decision, which has been used at times to indicate, because it has a statement in it within the context of Derivium, I don't disagree with, but within that case, it does indicate that one of the reasons for avoidance actions is the diminution of value for the detriment of creditors. That's not the only reason we have avoidance actions, but Derivium is easily distinguishable on its facts in that, number one, in Derivium, the account was not a demand account. It was a custodial account in which people put their stock, and it was, so if I took my stock and I came back a week later, I want my stock back, I get it. That's much different than a demand account, where if I take a check or I put $100 in there, then I'm not going to get my $100 bill back. I'm going to get a credit for it and get a right to get $100 back. So it is not really relevant to these facts, and the fact that the property before it was stipulated by the trustee. So again, I would point out that Derivium is a set of facts that I don't disagree with the ruling, but I would point out that it is not controlling, even though there's arguments that it was something that should be controlling in this case. However, I would argue that the Fourth Circuit has addressed this issue in the Tavern v. Smoot case. Now, I will agree. What would be the measure of damages if diminishment was not, or the potential for diminishment were not up? It would be once they came back to the bank and they started making transfers into the bank, the total amount, Your Honor, is approximately, it's $1,611,180. Yeah, I've seen your chart. So your theory of the case is that for the two years immediately preceding the filing of the petition, every cent from whatever source that goes into the fraudster's account at the bank, the bank disgorges that amount straight up. Is that your theory? That's my theory, and let me expand it on two ways. And am I right that it doesn't matter the source? So if his son had a little job on the side and for matters of convenience or something, a little paycheck was deposited in that account, that would be included? That may, at time of trial, be a more difficult one, Your Honor, but the thing is that that account, the two points I want to make, that account was being operated to give the facade of legitimacy to this fraudulent conveyance, I mean this fraud that he was depositing. Well, I understand your characterization, but it was just a checking account. It was a checking account. It was a checking account. It was a checking account, but that he was able to deal with people and they were able to see that he had a bank. Money in, money out. And the other aspect of it, Your Honor, is that I think it's critical. Normally, all of the issues the court just may be concerned about are taken care of for one reason, and that is the bank can come back and indicate, well, we acted in good faith. In this case, I am confident at trial, we're going to be able to show that's not the case. How is that different from a conspiracy claim? In terms of... I mean, in effect, what you're saying is the bank aided and abetted the Ponzi scheme. Well, it's different in that, for the reasons stated, I didn't have standing to bring that. I have specific core... You mean because of peri-delecto or something? Peri-delecto and the North Carolina law, but I have core code authorization to bring a 548 claim. So I don't have that problem, Your Honor, in terms of that. But again, I think the key here is the bank could, as most banks in 99% of the time, say, we acted in good faith. We're dealing with a demand deposit. We haven't done anything wrong. You can compare and look at the expert opinion we have. They don't have one. There's a reason for that. But if you look at that, I think you'll see that I will not have difficulty if given the opportunity to show that they acted in bad faith. It sure would be a good rule for Chapter 7 trustees, wouldn't it, if we rule in your favor? If I'm a Chapter 7 trustee, I'm not going to say that I would not. I'm up your organ for that. All over this country. I think it would be very limited because of the good faith defense. The good faith defense is very difficult to get around. You said yourself the good faith defense is an affirmative defense. We're talking about litigation. It would be a Niagara Falls litigation, wouldn't it? No, sir. And I had other banks I could have sued and did not because we did and we looked behind it and we, in the investigation, made sure that the good faith affirmative defense would not apply. And I think trustees would do that. It just wouldn't be a carte blanche. Let's sue and see what they say. Thank you. If it pleases the Court, Gary Rickner on behalf of First Citizens Bank, the appellee in this case. We were intrigued by the Court's interest in hearing whether or not the particular transactions or deposits in this case constituted a transfer. As the record will reflect, this is an issue that we've raised since the first filing of the motion for summary judgment in front of Judge Stocks. It was either glossed over or not ruled upon. But finally, he had to rule upon it because you wouldn't have gone to the rest of it if he found it wasn't a transfer. That's right. So he essentially found it was a transfer and you didn't bring that here. It is an issue that we raised on appeal, but we just raised it as an issue because implicated by the transfer rule is a disposing of or parting with the assets. We need to get back to basics. I think the Bankruptcy Court in the Southern District of California in the Enright Consolidated Pioneer case stated it best and it best characterizes the posture and history of this case. In our quest to understand fraudulent transfer liability, we often overlook first principles. What are the first principles? Whether or not the bank acted in its good faith is so far down the line, whether there's intentional or construction fraud, whether there was intent to hinder delay, you don't even get to until you make a determination that there has been a transfer. Now what is a transfer? Under 101, Code 101, the transfer is each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property. Now how do, how does investors wiring in or giving Mr. Whitley checks, taking them to the bank, enhancing and increasing the value of the estate, disposing of or parting with property? What does 548 say that the trustee has been talking about? What are the requirements there? The trustee may avoid any transfer of an interest of the debtor in property if the debtor voluntarily or involuntarily made sense transfer or occurred such obligation with the actual intent to hinder delay or defraud. So the transfer doesn't become fraudulent until several things happen. There was, in short answer to your question, I mean the issue that you pose, there was no transfer here. It wasn't the property of the debtor. It wasn't of the debtor's property. And it wasn't a mode or a transaction that disposed of or led to the parting of debtor's property. And when you look at what the... It was interest of, interest in property of the debtor, right? No, not until, you have to view it at the time of transfer. Under Barnhill... Transfer is a process. It's not a point in time for present purposes. But the key is, when did it become Whitley's property? The U.S. Supreme Court in Barnhill said in the 1992 case, it does not, that check and those wires from investors... Very different purpose, right? Barnhill is of use here. It is because the law is clear and there are eight cases in the briefs that indicate that the same analysis for fraudulent transfers is used for preferences. So you look at the transfer, the transaction at the time. Was it disposing of the debtor's property? No. It was enhancing the estate. Let me put it... Let me try to put it another way and Collier's... The Treatise on Bankruptcy can say it better. A transfer is a change in the rights of the transferor with respect to the property after the transaction and continues to quote... I mean, we disagree. Massey dealt with a preference. It's equally valid for the proposition for which we cited it. That is, a debtor's deposit of a non-exempt check into a non-exempt bank account, for example, is not a transfer from the debtor to himself or herself. So classifying such transactions would be akin to holding that a debtor is moving money from one pocket to another as a transfer. The debtor's interest in the property has not substantially changed, and all times the debtor's interest was exposed to creditors. The point is, when these 11 deposits went into the tune of $1,600,000, if the next day there would have been a bankruptcy filing, the trustees had $1,600,000 more that he would have had access to. Under 548, the requirements there, 548's phrase, an interest in the debtor of property, has generally been held to be the equivalent of property of the estate. Put another way, not all transfers are within Section 548 scope, only those that affect property that would have been property of the estate but for the transfer. In other words, you look at what property would have been the property of the bankruptcy estate immediately prior and immediately after. If after, it's negatively impacted, then you have a fraudulent transfer. And the cases are all over. As a matter of fact, this Court in the 1930 case, Citizens National Bank v. Lineberger, held in accordance with Massey that disposing or parting with property, a deposit of money into one's credit at a bank doesn't operate to diminish the estate. It creates an obligation on the bank to pay. So it's imperative 548 requires diminution in the estate, as Judge Stocks and Judge Osteen properly found. And there are certain requirements. So we don't even get Mr. Ivey and the trustee tried the civil conspiracy under North Carolina law. That's a private right of action that a trustee cannot stand in the shoes of. We're so far removed from that. It's an action by the investors if they ever saw fit to bring it. But, you know, I think the concept is that for the three reasons I just mentioned, we don't have to get past the fact that it's not a transfer. It's not a disposing of or parting. It's not by the debtor. It's by investors. And it's not of his property until it is in his bank account. Maybe I can explain by virtue of this very Ponzi scheme why it has to be that way. You're essentially saying we could dispose of this case on a very narrow ground of saying because this is a deposit into an unrestricted account, it doesn't constitute a transfer. And there are several courts that have gone in that direction. There are courts that have gone the other way. I'm not aware of one that would say in this context, for example, the trustee quoted the Quinn case. I think I'm correct. Every case that's been cited by the trustee involves the payment from the debtor to a creditor. He talks about the Smoot case. The Smoot case was a gentleman who got a personal injury award and transferred the money into a corporation he set up. In Quinn that he just mentioned, Quinn was a retail grocer and the dispute was over a check that the retail grocer was paying for groceries to the wholesale supplier. Every case is a diminution of the prospective debtor's estate. The trustee sent in a case with a two-letter supplemental authority, which was the Mora case. The first line in the Mora case is the debtor paying to a creditor. And again, as the NRA Consolidated Pioneer case states, at its core fraudulent transfers is a debt collection device, not a revenue-generating tool. But let's take this Ponzi scheme case. There are two sides to the ledger. I don't think anyone would argue that when these checks, $1.6 million, got deposited into the account, the estate is now ballooned to $1.6. What happens in a Ponzi scheme? Within a short time, payments go out by the debtor to probably earlier investors with the money from the later investors. Now, on that side of the column, you have transfers. You have the debtor transferring property. You have the debtor transferring his property. You have the debtor diminishing his estate to pay the investors. Now, if you said, Trustee, you can have all of this enhancing of the estate as it comes in, and you can also chase it on then. The docket reflects there are, I think, 47 cases against investors by the trustee on the basis that they didn't take in good faith and were initial transferees. Now, you're going to say that that same $300,000 that came in that the debtor paid out to these that Mr. Ivey has been chasing for four years, he gets a chance to double recover from the bank when the property is coming in and being deposited and enhancing and not diminishing the estate. You can't have it both ways. You cannot double recover. And that's why a review of any of the cases that they have cited all involve, many of them are preferences, and many of them are preferences, but the case, and I cite again the inconsolidated pioneer mortgage case, says, though there is no formal diminution of estate required in the statutory language, the purpose of the statute is to prevent a debtor from putting assets otherwise available to creditors out of their reach. These transactions, there were 11 of them, they went into his account eventually and were available to the trustee and all of the creditors that the trustee represented. So, you know, I think Mr. Ivey has gotten way down the road on this, and I think the Court's inquiry as to whether this constitutes a transfer, maybe we can look just for a second at this Court's 2013 case. I don't see anything distinguishing about it, the Derivium case. Are you going to talk about diminishment at all? Yeah. I mean, I just did. It's 548. I guess I'm not following you. I thought you were arguing there's no transfer here. And there's diminishment. No, but it shouldn't be and. Okay. Maybe furthermore would be a better transition. Okay. I'm just trying to follow. Okay. There are two issues on. At least I want to make sure I understand. Yes. If you prevail on the first leg of that argument that it's not a transfer, what do we have to discuss then? Then what we have to discuss is whether Judge Osteen and Judge Stocks were right that there clearly was no diminution of the estate, which is very clear because these were all. Judge Wynn says if you persuade us that there was no transfer, what do we have to talk about? Nothing. Okay. I misunderstood you, Judge. I'm sorry. I got you. Okay. No. Here's the point. You can affirm. You can ignore whether there's a transfer. Transfer requires a diminution or a parting, okay? So you could affirm on the basis that, in fact, there was no transfer. See, that's the problem. I guess that's my problem. Okay. Why does transfer require diminution? I thought your argument was that a fraudulent transfer or a preference required a diminution, not just any transfer. Exactly. I'm using transfer, transaction. These checks going in were not a term of art transfer under the code. They were a transaction. I'm using transfer generically, meaning to get it from here to here. Okay. And if we agree with you that it was not a transfer, end of case. End of case. Now, what if it is a transfer? Okay. When I say it, I mean the deposits into the account. If they were, they clearly don't meet the definition. They don't meet college and they don't meet anything. They don't meet what definition? Okay. The definition, here's one of them. Definition of what? Transfer. Okay. Well, let's go to diminution. There's two statutes that are applicable. One is 548 that says, the trustee may avoid any transfer of an interest of the debtor in property if the debtor voluntarily made such transfer. So in this case, he didn't make the transfer. So that's the definition of transfer. That's the definition. All of the cases support you have to have diminished the estate. What fraudulent transfer is preventing is the payment of a few creditors to the prejudice of many. It sounds like you're saying that for purposes of this statutory subsection, there's no difference between a transfer and a transfer involving a diminishment. That's right because – That's your argument, that there really is no difference between the two? Either one is dispositive of the case because – But is there a difference between the two? No. The transfer requires a parting with property. I parted with property so that would, in effect, diminish the estate. So the cases interpret that as diminishment being a requirement, as this court did in Derivium. So the court can't affirm on the basis that there wasn't a diminution in the value of the state as the law has interpreted. Or the court could say we don't even have to get there to affirm or we affirm on that ground and on the ground that there wasn't a transfer to begin with, which Judge Osteen and Judge Stocks didn't really discuss other than just to continue to call it a transfer, I think, without really getting into the fact that it was a term of art. But if we look at what I think is the most persuasive case, it's this court's decision in Derivium. Derivium Capital set up a stock loan program where if I wanted to borrow money, I would borrow money and I would transfer stock into its brokerage account at Wachovia, and the stock was supposed to collateralize, securitize the loan, and I guess hedge it. And what Derivium did is they simply liquidated the stock, took the money, and continued to make it. It's a form of a Ponzi scheme. And the holding was the borrowers' transfers of stock into brokerage accounts were not avoidable as fraudulent transfers. Brokerage firms were not initial transferees of cash transfers that debtors and related entities deposited into brokerage accounts. And the court goes on saying that Grayson relies heavily on Bear Stearns. The Bankruptcy Court permitted the trustee to avoid transfers by a debtor into a broker's margin account. Here, the Bankruptcy Court distinguished Manhattan investment by explaining that the customer transfers involved transfers of stock by third parties. That is, the transferred securities came to Derivium. In this case, they came to Whitley. They didn't come from Whitley. And that's the other side of the ledger that I mentioned where he did, in fact, transfer under the term as it's used in the code when he repaid principal or interest to other investors. So, I mean, we think the law is, you know, beyond clear. We don't agree that Massey isn't applicable. This court and other courts have said. As a matter of fact, Judge Osteen made the comment. I mean, basically, this is no different, really, than if Whitley would have gone down to his safe and pulled out cash and walked it down and put it in his bank account. I mean, if you look at the transaction before and after, was his estate, was his bankruptcy estate harmed in any fashion that would be prejudicial to his creditors? And the answer is no. We didn't. But, basically, are you saying that for purposes of determining what properties or preferences that the trustee could get at, you can't decouple fraudulently and transfer? You can't? The adjective and the noun cannot be decoupled? Okay. And which two? I'm sorry, which two now, John? Fraudulent transfer. You said you can't decouple them. Okay. A transfer is not fraudulent unless it is a transfer in which the debtor is disposing of or parting with his property. So this whole 548 code provision on fraudulent transfers is a mechanism, it's a plan, it's a statute by which the trustee can be a debt collector because the debtor diminished what would otherwise have been available and he did it fraudulently or with an intent to harm his creditors. So we use the term transfer, but the code provision requires that if it is a transfer, a true transfer, it has to be a parting with or a disposing of property. That's why this Court's determination that it was a transfer would be dispositive of the case and or, if it's determined correctly, as Judge Osteen did, that diminishment is required, which is kind of implied in the definition of 101 on transfer. If it's parting with, you're diminishing, you're giving away. That's what the fraudulent transfer law is all about, is not letting that happen. And I think among the trustees' arguments, the one I find most clever is this idea that when you operate a Ponzi scheme, when you create new victims, you're in effect diminishing the estate. Don't you think that's pretty clever? Well, I mean, it may be, but you know what? There's no factual basis for it. For example, we have 11 deposits, all right? Did these come from some of these investors who invested two times, three times, four times, or did we expand? But the assumption is that the fraudster is going to pull some of the money out for his own purposes. So just because you get $100,000 coming in doesn't mean you're going to pay out the whole $100,000 as interest in return or principal to earlier victims, right? There's a little bit coming off of every, I assume. Is that not right? But if it's coming off, that means it's staying in the bank, and it's his profits or whatever that the trustee can get at. We're trying to get those things. There are no profits. You said he's keeping a little. If he keeps it, that's in his bankruptcy estate. If he pays it back to earlier investors, he's gotten rid of it. That's why it has to be a diminishment on this side, not enhancing the estate on this side. I mean, that's as best as I can explain it. I think derivative says it all, frankly. So you don't think the bank's knowledge or motives have anything to do with the knowledge of fraudulent transfer? Absolutely not, because if this doesn't meet the definition of a transfer and doesn't meet the definition of 548 conveyance of interest of the debtor in property, there is no claim. You have to have a fraudulent transfer to make a claim against the bank, which then could raise the issue of good faith or taken for value or whatever else. We don't get to affirmative, I think, as Judge Davis mentioned earlier. You're going to need to worry about affirmative defenses when we can't get by the very, very first hurdle that this is not even a transfer. So it has to be a fraudulent transfer, and it's not a fraudulent transfer. The district court found because it didn't diminish the estate, and we contended that it was ignored in the district court. It's not a transfer because it doesn't meet the definition of a transfer under Code Section 101-54. And with that, we would urge affirmation on either non-diminution or both the transfer issue, and thank you. All right, thank you. Mr. Rickner? Judge Davis, let me start by circling back to your comment. Yes, you can have diminution of value on either side of a balance sheet. You can have diminution of value because assets disappear. You can have diminution of value because in bankruptcy we're dealing with prorated distribution because debts go up. And if you go to the record, and if you want to go through the proofs of claim, Your Honor, and add up what happened after this start, you will find that $1,751,286.85 of additional victims were added after this process. I can assure you that after the fraudulent conveyances, started we have basically $1.7 million of additional debt, additional victims. Over that two-year period? Yes, sir. And if you ask them, I can assure you they're saying there was a diminution of what they're getting. I can assure the involuntary case. We've got to remember there's an involuntary case falling that way. But let me address some quick things on diminution, and then I want to end by going back to transfer real quick. There's no question that diminution of value is not written in 548. It's not fair. That is why the 11th Circuit and N. Ray Davis made the comment when somebody was trying to get them to go down this valuation issue. Yes, it was in a discharge case, but same language. They basically said, you're asking us to be a legislature. That's for Congress to do, and I think that is correct. If you were to imply this element into actual fraud, you are doing away with actual fraud. There's no reason, Trustee, I would ever bring it, I have to prove constructive fraud and intent. So you've just basically, by that ruling, written it out of existence. Lastly, let me just walk through the creation of property. When an investor or victim gave Mr. Whitley a check, Mr. Whitley had property because he had that check, and when he deposited, that's his transfer into the bank account. Why is possession of that check property? Why is it check property? Well, at that point in time, Mr. Whitley could go sell it. A lot of people take them to check cashing stores, sell them for a discount. He could have pledged it as collateral. Checks are given to people, a series of them, for collateral of a loan. He could have endorsed it to pay to the order of somebody else and bought something with it, or he could have cashed it. If you can sell it, you can collateralize it, and you can transfer it, it's property. It's even easier when you get to certified funds in terms of a bank check. When he had that, that's his money. That's the same as cash. So when he takes his cash, he takes his certified check, that's property. That's a transfer. As far as wires are concerned, he got property rights when those things were wired because there was a payment order issued to the bank, and at that point in time, he has in properties a very large term. He had property rights, so when that was deposited, it was. And the last one, which is what? It was what? It was property of the estate, and it was a transfer. It was property, but transfer means what? Transfer is dominion and control. In effect, it's that at that point in time, once these deposits hit the bank, Your Honor, and you go back to the Citizens National case that this court ruled in the 30s, those funds, when they hit the bank, are no longer the depositor's funds. Those are now the banks to do with as they choose. They can lend it. Other courts have called it a loan. Dominion and control is lost at that point in time. That's the point of transfer. And in this case, we really don't have to get into whether it's. . . How do dominion and control laws when you can go in and draw all your money out the next day? Because you have, as the bank or the Supreme Court, even the Massey indicated this, what you get is a credit. Now you have something new. You have a credit. That's your new property, right? And you have control over that. But you do not have control over what you deposited. The bank does. The bank uses that money. In terms of today's world, it gets in the regulatory balances of how much they can loan and other things. But that property is no longer. . . If I take $100 and give it to the bank, it becomes the bank's property. In turn, they give me a credit back. But I don't have dominion and control over that. And derivium was different. Derivium, you went and got your stock certificates back. There was some fraud going on, but that was the intent. You got exactly what you deposited back, unlike a $100 bill. I don't get the same $100 bill back. The last thing I wanted to point out is that a lot of these funds, and I think some of the wires were this, came from an attorney's trust account. Mr. Whitley was the beneficiary of that trust account. He clearly controlled that. If the attorney had tried to give it to somebody else other than following the beneficial interest that he was supposed to, he could lose his license. So clearly there's a property interest that attached to that one. If I take a $100 bill and go to the store and say, can I have five 20s, and I get the five 20s, I just transferred my money. I wouldn't say it's mine, Your Honor. I would say it's 101-54. It's the Bankruptcy Code definition, Your Honor. Not the same $100 bill. That's what you just told me. Correct. I mean, I agree with you, but I'm saying it's not my definition. It's my interpretation of the Bankruptcy Code because the Bankruptcy Code, and I don't think there's a case out there that says otherwise. To the logical extent of your argument. Yes, sir. Under my hypo, that would be a transfer. Yes, sir. It would be a transfer because it is defined that way under Section 54 as amended in 05 and even previously. It would not have been under the Massey World, which was, excuse me, Your Honor, under the Massey World, which would have been a different definition under the Act. Thank you. All right. Thank you. We'll come down to Greek Council and proceed to our last case for the day.
judges: Roger L. Gregory, James A. Wynn Jr., Andre M. Davis